1

2

Bryan J. Thomas (SBN# 151578)
bryan@bjthomaslaw.com
LAW OFFICES OF THOMAS AND ASSOCIATES
1801 Century Park East
24 Floor
Los Angeles, California 90067
(424) 201-5446
(424) 316-3038 Fax
Attorney for Plaintiff
Fifth Degree Tours #2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| FIFTH DEGREE TOURS #2 ) | CASE: |
| ) | COMPLAINT FOR DAMAGES FOR: |
| ) | |
| Plaintiff, ) | 1. UNFAIR BUSINESS PRACTICE |
| ) | [North Carolina Gen. Stat §75-1.1, et |
| vs. ) | seq.] |
| ) | 2. UNFAIR BUSINESS PRACTICE |
| LIVE NATION WORLDWIDE, INC.; ) | [North Carolina Gen. Stat § 75-1-1, et |
| LIVE NATION TOURING (USA), ) | seq.] |
| INC. ) | 3.UNJUST ENRICHMENT |
| Defendant ) | 4. BREACH OF CONTRACT |
| _____ | 5. BREACH OF ORAL CONTRACT |
| | 6.INTENTIONAL |
| | MISREPRESENTATION |
| | 7.TORTIOUS     INTERFERENCE |
| | WITH  PROSPECTIVE ECONOMIC |
| | ADVANTAGE |
| | 8. NEGLIGENT INTERFERENCE |
| | WITH PROSPECTIVE ECONOMIC |
| | ADVANTAGE |
| | |
| | DEMAND FOR JURY TRIAL |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Plaintiff Fifth Degree Tours #2 ("FD or Plaintiff"") brings this action against Live Nation Worldwide, Inc ("LN or Defendant") and Live Nation Tours (USA), Inc., for unfair business practices, unjust enrichment, breach of contract, breach of oral agreement, intentional misrepresentation, and libel.

## I.
## PARTIES

1.   Plaintiff is a North Coralina limited liability company with its principal place of business at 1101 Woodside Ave., Charlotte, North Carolina 28205.

2. Plaintiff is a national independent live music concert promoter, led by Wesley Hunter. Wesley Hunter has over 30 years' experience in promoting live music concert events, including but not limited to Jay Z, Mariah Carey, Gwen Stefani, Diana Ross, and other critically acclaimed musical artists.

3.   Live Nation Worldwide, Inc. ("LNW") is a Delaware company, registered as a foreign entity doing business in the State of California with its principal place of business at `9348 Civic Center Drive, Bevely Hills, CA 90210.

4. Live Nation Touring (USA), Inc. ("LNT") is a Delaware company, registered as a foreign entity doing business in the State of California with its principal place of business at `9348 Civic Center Drive, Bevely Hills, CA 90210.

2.

## II.
## JURISDICTION AND VENUE

5.   This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332(a). This Court also has supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant, and the venue in this District is proper because Defendant is registered with the California Secretary of State and its principal place of business is in this Judicial District.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 139 (b)(1) because Defendant has its principal place of business in this Judicial District, and a substantial part of the decisions, events or omissions giving rise to the claims occurred in this Judicial District.

## III.
## STATEMENT OF FACTS

8. On or about February 21, 2024, Eric Mitchell of Fifth Degree Tours #2, LLC (hereinafter "FD") contacted Jordan Benghiat at Live Nation Entertainment (hereinafter "Live Nation") to request renting the PNC Music Pavilion in Charlotte, North Carolina ("PNC") for a live concert event called "Jam Fest," to be held on July 20, 2024. PNC capacity is 19,500. The venue can hold 9,500 seated guests and an additional 10,000 on the lawn.

3.

9. On or about February 26, 2024, Eric Mitchell sent an application for rental of the PNC to Kevin Appler ("Appler") as well as, inquired as to any holds for the requested July 20, 2024, date and informed Appler that FD is ready to go into contract.

10. On or about February 29, 2024, Appler responded to Eric Mitchell that the venue rental is still in review.

11. On or about March 1, 2024, Jinny Sample ("Sample"), Promoter Representative for FD, contacted via email Appler regarding placing a First hold on the date of July 20, 2024, at the PNC Pavilion for a live concert event.

12. On March 6, 2024, Jinny Sample emailed Appler requesting a status on FD's application for booking the PNC venue, including requesting information regarding the venue fee, Promoter's guide and Tech guide in order for FD's event to align with the specifications and requirements for the venue.

13. On March 8, 2024, Appler replied to Jinny Sample that PNC would not be able to open its venue calendar to a ticketed venue rental until April 1, 2024, and would not provide the requested information until April 1, 2024, in the event there is an opportunity available.

14. On March 8, 2024, Jinny Sample replied to Appler informing Appler that FD's concert event was a scholarship fundraiser for Winston Salem State University, which is a HBCU, and that the University is aware that FD is waiting on PNC for

4.

approval for the concert.

15. On March 8, 2024, Appler replied to Jinny Sample, that the fundraiser is a "wonderful" cause, but LNW could not place a hold on the venue for a ticketed rental event on July 20, 2024, or July 21,2024 as LNW is not able to open its venue calendar to ticketed venue rentals until April 1, 2024. Furthermore, Appler offered to schedule a call for the week of April 1, 2024.

16. On April 2, 2024, Jinny Sample emailed Appler and informed him that they "don't need to meet in order to place a hold on the venue". Sample further informed Appler that he already had FD's request for a hold and credentials, "simply place the hold and let her know if the hold is in 1st, 2nd or 3rd hold position".

17. Jinny Sample then send Appler another email on April 2, 2024, giving Appler more details on the fundraiser and potential lineup of renowned artist such as Jeezy, Sexyy Red, Plies, Boosie and additional acts to be announced.

18. On April 3, 2024, Jinny Sample sent an email to Appler stating that LNW has had FD's request for a hold for over a month and despite emails and phone calls, she has not received any update from LNW. Jinny Sample reiterated that they need to know the status of the hold in order to finalize FD's concert plans.

19. On April 4, 2024, Appler responded to Jinny Sample via email stating that he would get back to her as soon as possible.

5.

20. On April 4, 2024, Jinny Sample responded to Appler stating that "it has been almost five weeks since their first communication for a hold and LNW has yet to provide the requested hold." Jinny Sample further informed Appler that it was urgent that the hold is resolved because FD must inform WSSU of the concert status. Jinny Sample further requested that Appler provide an explanation for the hold-up and what steps FD needed to take in order to expedite the process.

21. On April 5, 2024, Jinny Sample contacted Appler via email informing Appler that the event was very important for the HBCU community due to their historic struggles with underfunding and limited resources and that Jam Fest was designed as an event to kick start FD's fundraising for the entire HBCU community of schools.

22. On April 11, 2024, Jinny Sample emailed Appler confirming their phone conversation and the current lineup of Artist for Jam Fest. Appler informed Jinny Sample that the LNT booking department needed to approve the Artist lineup for Jam Fest and once approved, the next steps of securing the venue would take place.

22. On April 12, 2024, Appler emailed Jinny Sample informing her that the 1ˢᵗ hold for a ticketed rental event at the PNC Music Pavilion has been granted. Appler further informed Jinny Sample that the hold has been placed by LNT booking department for the following Artist: Jeezy, Boosie, Plies, Flo Milli, Kali Uchis, Rubin Rose, Shyfronmdatre and Solo.

6.

23. Appler further informed Jinny Sample that moving forward her direct point of contact will be with Jonathan Rosas, National Director of Third-Party Programming.

24. On or about May 7, 2024, Jinny Sample informs Jonathan Rosas that FD is adding recording artist Kevin Gates to the Jam Fest lineup.

25. On or about May 7, 2024, Jonathan Rosas responds to Jinny Sample by informing her that Live Nation owns the PNC venue, and they have multiple touring deals and "can't have conflicting offers in the market". Jonathan Rosas further states "that's why Live Nation needed the full lineup prior to getting a contract done" and he would send the Kevin Gates request to the Talent and Touring team for their approval.

26. On or about May 8, 2024, Jinny Sample sends an email to Jonathan Rosas informing him that FD is an independent promoter, therefore, an Live Nation competitor, hence, why would Live Nation have veto power over FD's artist lineup and no other venue has ever requested that FD produce an artist list for approval.

27. On May 21, 2024, LNT confirmed the request for Sexy Red to appear on the Jam Fest show, but only as a supporting artist, NOT as a headliner.

28. Approximately two weeks before the Jam Fest show, FD CEO Wesley Hunter met at the PNC Music Pavilion with his head of security Mario Sims and a PNC representative, to do a walkthrough of the venue. Wesley Hunter was shown the

7.

backstage, dressing rooms, conference rooms, cafeteria, stage, and a large VIP tent which was an empty space with no tables, chairs, couches, decorations etc. It was the only VIP option that was offered to FD for the Jam Fest concert. The PNC representative did not offer any other VIP benefits such as parking or exclusive bar access to FD for its VIP guest.

29. However, two months after the Jam Fest concert, Wesley Hunter attended a Hootie and the Blowfish concert at the PNC and was given a VIP guest parking and VIP wristband for VIP access into the VIP areas of the venue. Wesley Hunter discovered that there was an entire VIP area that included chairs, tables, couches, bar(s), and other VIP amenities that was never offered to FD during the walkthrough.

30. On July 20, 2024, during the morning of the show, at approximately 7am, the crew began loading the equipment for the stage and sound, when unannounced, local police showed up at the venue with a drug sniffing dog. The police dog searched the stage, backstage and the dressing rooms, despite the fact, the only people at the venue were the crew employed by the venue.

31. Wesley Hunter, who has been a concert promoter for over thirty years, has never had a police dog search his show.

32. Upon arrival at the venue on July 20, 2024, Wesley Hunter had multiple interactions with Appler during the day regarding a variety of production issues.

8.

Appler in response to each issue, would demand that the show be canceled instead of simply resolving the "at issue" production matter. Wesley Huner estimates that Appler demanded that the show be canceled over twelve (12) times before the show start time of 4pm.

33. During the Jam Fest concert, a thunderstorm hit the show. Appler informed FD representatives that the show had to be canceled. Wesley Hunter refused and indicated that he wanted the crowd to seek shelter under the Pavilion roof until the storm passed as PNC had done with Rock shows in the same circumstances. Appler then informed FD that the show could be halted until the storm passed but all concert attendees on the lawn area would need to leave the lawn area and walk back to their cars during the storm to seek shelter while the concert was "paused." Unlike previous Rock shows where lawn attendees were provided shelter under the pavilion roof, there were no other options given to the concert attendees located on the lawn area. As a result, the lawn attendees had to walk back to their cars in the thunderstorm, some walking over a mile in dangerous conditions.

34. During the break, local DJs performed for the crowd who were seated under the Pavilion roof.

35. Approximately an hour later, Appler met with FD representatives to inform them that the weather report was showing more severe weather and an extensive storm coming to the area. Appler stated to Wesley Hunter that the show had to be

9.

1

2
cancelled.

3
36. Wesley Hunter refused to cancel the show and FD representatives met

4
backstage with Appler and Jonathan Rosas via phone and all parties agreed to

5
postpone the Jam Fest concert due to the weather. The parties agreed upon the

6
language used to inform the crowd and the announcement was made by the DJ,

7
informing the crowd that the Jam Fest concert has been postponed with a new date

8

9
to be determined. Thereafter, LNW posted an online announcement stating the Jam

10
Fest concert was Postponed and a new date to be announced.

11
37. On July 22, 2024, FD representatives contact Jonathan Rosas via email

12
regarding a scheduled conference call to get a new date for the postponed concert.

13
Jonathan Rosas replied that he was unable to join the conference call due to "they

14

15
need more time."

16
38. On July 23, 2024, both Jinny Sample and Wesley Hunter attempted to speak

17
with Jonathan Rosas regarding getting a new date for the postponed concert.

18
39. Wesley Hunter informed Jonathan Rosas via email that it was urgent that they

19

20
receive a new date as soon as possible in order to capitalize on the buzz of the show

21
being a considerable success and avoid being locked out of securing new artists for

22
the continued Jam Fest show.

23
40. Thereafter, on July 24, 2024, Jonathan Rosa, Jinny Sample and Wesley Hunter

24
appeared via zoom wherein Jonathan Rosa informed FD representatives that the

25
10.

26

show was canceled and there would be no new date for the show. Wesley Hunter objected to the cancelation and asked for LN's attorney information.

41. On July 29, 2024, Philip Nevinny of Live Nation and an FD representative met via zoom where Philip Nevinny reiterates that the concert was canceled, and no new date would be provided to FD.

42. LNW unilaterally canceled the Jam Fest concert without any authorization by FD or powers pursuant to the Venue Agreement. The Venue Agreement, section Term (C), states "Upon the expiration of the License Period or the termination of this Agreement pursuant to a breach of the terms and conditions set forth, prior to the expiration of the Term, Licensee shall immediately quit and surrender the Venue to PNC. The Venue Agreement is attached as Exhibit A and incorporated herein.

43. In addition, pursuant to the governing provision of Ticketmaster, the Promoter of the concert is called the "Event Organizer" and only the Event Organizer can cancel events and make arrangements for ticket refunds, exchanges etc.

44. LNW issued a press release, without consulting FD or getting its approval, announcing that the Jam Fest concert was canceled and instructing ticket holders how to get refunds for their tickets.

45. As a result of the cancelation, FD lost all ticket sale revenue from the Jam Fest concert and Artist deposits, however, LNW retained all revenue from ticket fees,

11.

parking, concessions, and merchandise.

46. In addition, LNW knew that the Jam Fest concert was a fundraiser for HBCU students, and all charitable contributions would be lost as a result of LNW's unilateral decision to cancel the concert.

47. One week after the Jam Fest concert, another concert at the PNC by Limp Bizkit (a rock act) was hit by a thunderstorm; the crowd was treated much differently than the crowd at the Jam Fest concert. The Limp Bizkit concert attendees on the lawn area were told to seek shelter under the Pavilion roof during the storm. Once the concert could not continue, that concert was postponed and rescheduled to another date.

48. In addition, FD received numerous complaints from people who attempted to attend the show who stated that the box office had closed early, and a substantial number of people were still parking and walking to the venue in an attempt to purchase tickets to the show before the headliner had taken the stage.

49. After the cancelation of the Jam Fest Show, FD has attempted to produce other shows. FD contacted the Spectrum Center in North Carolina, capacity 18,504, to produce a show featuring the music artist "Future."

FD attempted to place a hold on the arena for the Future date with Dan Bain ("Bain"), Vice President of Booking & Events for the Spectrum Center. On or about December 18, 2024, Bain, who had lunch with Appler during FD's attempt to

12.

place a hold on the venue, rejected FD's application based on his conversation with

Appler and his claim of the background checks with other venues. PNC provided a

negative review of FD's performance as Promoters to Bain which was the basis for

the FD rejection.

As a result, the Spectrum Center refused to allow FD to access the Arena for the

Future show.

50. Thereafter, FD lost multiple investors as FD has been unable to secure "hold(s)"

in large scale arena(s) in the United States.

51. On July 26, 2025, FD produces the Rhythm and Boots show at the Apopka

Amphitheater which holds 1,300 people and is a City own venue. Apopka is the

smallest venue FD has ever produced a show.

### FIRST CLAIM FOR RELIEF
### FOR UNFAIR METHODS OF COMPEITTION IN OR AFFECTING COMMERCE.
### NORTH CAROLINA UNFAIR AND DECEPTIVE PRACTICES ACT (UDTPA) [N.C. GEN. STAT. § 75-1.1 et seq.]
### (AGAINST LIVE NATION TOURING (USA) INC.)

52. Plaintiff re-alleges and incorporates by reference all preceding paragraphs,

inclusive, as though set forth in full herein.

53. N.C. General Statute §71-1.1 et seq. states in pertinent part that unfair or

deceptive practice: A practice is unfair when it offends established public policy or

when the act or practice is "immoral, unethical, oppressive, unscrupulous, or

substantially injurious to consumers."

13.

A party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position.

54. Defendant LNT violated N.C. General Statute §71-1.1 et seq.

55.  The above-described conduct by defendants constitutes unfair business practices within the meaning of the N.C. General Statute §71-1.1 et seq.

56. In particular, but not limited to, LNT required prior approval of FD's artist list for the concert. There is no term or provision in the rental agreement for PNC which requires or gives LNT the authority to approve FD's artist for the concert or dictate that if an Artist could appear, it could only appear as a non-headliner.

57. In addition, LNT admitted that their booking department, which is an entirely different company than LNW, was dictating to FD who could perform at the Jam Fest concert and in what capacity, thereby limiting FD's ability to secure the best artist for the concert.

58. LNT, as a live concert promoter, was directly affecting a competitor, i.e., FD ability to put on a successful concert in the Charlotte market.

59. Pursuant to N.C. General Statute §71-1.1 et seq. an order should be issued requiring defendants to disgorge all monies which it received from any person who purchased a ticket and/or attended the concert and purchased concessions, merchandise or paid for parking and,  all profits which LNW and/or LNT earned from the concert.

14.

**SECOND CLAIM FOR RELIEF**
**(Dissemination of Untrue and Misleading Public Statements in Violation of et**
**N.C. General Statute §71-1.1 et seq.)**
**(AGAINST LIVE NATION WORLDWIDE, INC.)**

60. Plaintiff re-alleges and incorporates by reference all preceding paragraphs,

inclusive, as though set forth in full herein.

61. Defendant LNW violated s N.C. General Statute §71-1.1 et seq.

by making or disseminating, or causing to be made or disseminated, before the

public via their online website a notice to the public that the Jam Fest concert held

on July 20, 2024, had been canceled by FD and that Defendant knew or should have

known that statement was untrue or misleading in connection with the Jam Fest

concert.

62. For an act or practice to be deceptive it must have "the capacity or tendency to

deceive" but proof of actual deception is not required. Deliberate acts of deceit or

bad faith do not have to be shown, rather, the claimant must demonstrate that the

act or practice possessed the tendency and capacity to mislead or created the

likelihood of deception.

63. Defendant knew that FD wanted a new date for the postponed concert and

informed LNW of their intentions to continue the Jam Fest concert. In fact, the

parties on July 20, 2024, agreed to postpone the concert to a date to be determined.

15.

64. Despite this knowledge, LNW announced to the public and without FD's authority or consultation, that the Jam Fest concert was canceled.

### THIRD CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (AGAINST LIVE NATION WORLDWIDE, INC.)

65. Plaintiff re-alleges and incorporates by reference all preceding paragraphs, inclusive, as though set forth in full herein.

66. Plaintiff is informed and believes, and on that basis allege, that Defendant LNW breached its agreement, improperly and without authority canceled the Jam Fest concert meanwhile retaining all the profits made from ticket fees, parking, concessions, merchandise, and other concert revenue streams.

67. As a result of Defendants' wrongful conduct, Defendant has been unjustly enriched at the expense for Plaintiff and have unjustly retained the benefits of their wrongful conduct.

68. Defendant should be made to disgorge their ill-gotten gains and restore such monies to Plaintiff.

69. As a direct and proximate result of the Defendants' fraud and deceit, the Plaintiff has suffered damages, including loss of ticket sales, charitable donations, attorneys' fees, costs, and expenses.

70. Plaintiff is entitled to a constructive trust and restitution of the amounts wrongfully taken and retained by the Defendant at Plaintiffs' expense.

16.

**FOURTH CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(AGAINST LIVE NATION WORLDWIDE, INC.)**

71. Plaintiff re-alleges and incorporates by reference all preceding paragraphs, inclusive, as though set forth in full herein.

72. Plaintiff and Defendant entered into a Venue License Agreement, effective date May 1, 2024. (see Exhibit A)

73. Plaintiff have performed or substantially performed all their obligations under the contract.

74. Defendant has failed to fulfil its obligations under the contract.

75. Plaintiff paid a deposit fee of $50,000 to secure the rental rights for the PNC Music Pavilion in Charlotte, NC ("Venue") for a music concert entitled "Jam Fest" set for July 20, 2024.

76. On July 20, 2024, a thunderstorm hit the Jam Fest concert and Plaintiff and Defendant agreed to postpone the concert with a new date to be determined and made an announcement to the Jam Fest crowd.

77. Thereafter, Defendant made an announcement on their online platform that the Jam Fest concert has been postponed and a new date to be determined.

17.

78. Defendant breached the Venue License Agreement by unilaterally canceling the event on August 6, 2024. Pursuant to the Venue Agreement, section 16H., <u>Force Majeure</u>, the Agreement defines "Force Majeure Occurrence" as *"to include, without limitation, Acts of God, strikes, labor disputes, war, fire, earthquake, serious weather anomalies such a hurricane, tornado, cyclone, typhoon, blizzard, tidal wave, tsunami or flood, acts of public enemies, acts of terrorism, epidemic, action of federal, state or local government authorities, or other event or reason beyond the reasonable control of a party that, in each case makes the non-performing party's performance impossible or impractical*. The parties never canceled the event on July 20, 2024, thereby triggering the 16. H provision.

79. On the contrary, the parties agreed to postpone the Jam Fest concert and make a public announcement of the new date. However, Defendant unilaterally canceled the Jam Fest concert on August 6, 2024, and has refused to provide a new date for the completion of the concert.

80. Plaintiff did not authorize or approve the cancelation of the Jam Fest concert.

81. Defendant's breach of the Venue License Agreement approximately caused damage to Plaintiff because, as a direct and approximate result of the breach Plaintiff lost deposit payments made to the Artist, productions cost, marketing and advertising cost, and ticket sale revenue.

18.

**FIFTH CLAIM FOR RELIEF**
**BREACH OF ORAL CONTRACT**
**(AGAINST LIVE NATION WORLDWIDE, INC.)**

82. Plaintiff re-alleges and incorporates by reference all preceding paragraphs, inclusive, as though set forth in full herein.

83. Plaintiff and Defendant entered into an Oral Agreement, effective date July 20, 2024.

84. Plaintiff have performed or substantially performed all their obligations under the oral contract.

85. Defendant has failed to fulfill its obligations under the oral contract.

86. On July 20, 2024, a thunderstorm hit the Jam Fest concert, and the Plaintiff and Defendant agreed to postpone the concert with a new date to be determined and made an announcement to the Jam Fest crowd.

87. Thereafter, Defendant made an announcement on their online platform that the Jam Fest concert has been postponed and a new date to be determined.

88. Defendant breached the Oral Agreement by unilaterally cancelling the event on August 6, 2024.

89. The parties agreed to continue the Jam Fest concert on a new date and made a public announcement. However, Defendant canceled the Jam Fest concert on August 6, 2024, and has refused to provide a new date for the completion of the concert.

19.

90. Plaintiff did not authorize or approve the cancellation of the Jam Fest concert.

91. Defendant breach of the Oral Contract approximately caused damage to Plaintiff because, as a direct and approximate result of the breach, Plaintiff lost deposit payments made to the Artist, productions cost, marketing and advertising cost, and ticket sale revenue.

## SIXTH CLAIM FOR RELIEF
## INTENTIONAL MISREPRESENATION
## (AGAINST LIVE NATION WORLDWIDE, INC.)

92. Plaintiff re-alleges and incorporates by reference all preceding paragraphs, inclusive, as though set forth in full herein.

93. Defendant LNW made specific and false representations and statements to Plaintiff that the Jam Fest concert would be postponed, and a new date would be determined later.

94. Defendant intentionally represented to Plaintiff that they would work with Plaintiff to provide a new date to complete the concert that had been postponed due to the thunderstorm.

95. Plaintiff alleges that the representations alleged above were in fact false. At the time such representations were made by Defendant, Plaintiff relied on the false representation and believed them to be true. The plaintiff is informed and believes, and on that basis alleges, that at the time Defendant intentionally made these false

20.

representations, Defendant knew, or should have known, that these representations were false, and that Plaintiff would rely upon them. The Plaintiff is informed and believes, and on that basis allege, that Defendant intended for Plaintiff to rely on the representations.

96. Plaintiff justifiably relied on Defendant's representations with respect to the representation of the postponement of the concert. In reliance on this representation, Defendant were induced to, and did, seek investors and contracts with other Artist to perform at the continued concert date.

97. Plaintiff's reliance on Defendant's representations was justified because of Defendant's false reassurance of their intentions to continue the postponed concert to a new date was agreed to by the parties and a public announcement was made to the public via Defendant's online website to its customer base and by FD's DJ to the concert crowd on July 20, 2024.

98. Defendants should be made to disgorge their ill-gotten gains and restore such monies to Plaintiff.

99. As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff has suffered damages. The amount of these damages has not been precisely determined, and the damage continues to accrue. Notwithstanding, Plaintiff believes the damage to be more than $20,000,000.00.

21.

**SEVENTH CLAIM FOR RELIEF**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC**
**RELATIONS**
**(AGAINST LIVE NATION WORLDWIDE, INC.)**

100. Plaintiff re-alleges and incorporates by reference all preceding paragraphs, inclusive, as though set forth in full herein.

101. Plaintiff claims that LNW intentionally interfered with a relationship between Plaintiff and Spectrum("Spectrum").

102. That Plaintiff and Spectrum were in an economic relationship that probably would have resulted in a future economic benefit to Plaintiff.

103. That LNW knew or should have known of this relationship.

104. That LNW acted with malice or unlawful intent by engaging in intentional acts such as providing false, misleading, and negative information to Spectrum regarding Plaintiff's performance during the concert on July 20, 2024, at PNC, designed to disrupt the relationship.

105. That the relationship was disrupted.

106. That Plaintiff was economically harmed; and

107. The economic harm to Plaintiff proximately caused by the acts of LNW.

22.

**EIGHTH CLAIM FOR RELIEF**
**NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**
**(AGAINST LIVE NATION WORLDWIDE, INC.)**

108 Plaintiff re-alleges and incorporates by reference all preceding paragraphs, inclusive, as though set forth in full herein.

109. Plaintiff claims that LNW negligently interfered with a relationship between Plaintiff and Spectrum("Spectrum").

110. That Plaintiff and Spectrum were in an economic relationship that probably would have resulted in a future economic benefit to Plaintiff.

111. That LNW knew or should have known of this relationship.

112. That LNW knew or should have known that this relationship would be disrupted if it failed to act with reasonable care.

113. That LNW failed to act with reasonable care.

114. That LNW engaged in wrongful conduct through providing false, negative, and misleading information regarding FD's performance as a promoter on July 20, 2024, at PNC.

115. That the relationship was disrupted.

116. That Plaintiff was harmed; and

117. That LNW's wrongful conduct was a substantial factor in causing Plaintiff's harm.

23.

Complaint and Jury Demand

Case No._____

# PRAYER FOR RELIEF

WHEREFORE, Free-Free respectfully request the following:

1. Award Plaintiff lost profits in the amount of twenty million dollars.

2. For economic loss in the amount of twenty million dollars.

6. For special or punitive damages in the amount of twenty-five million dollars.

7. A verdict in favor on all claims for relief.

8. Attorney's fees and costs incurred in bringing this action as well as such other and

additional relief as the Court may determine to be just and proper.

## DEMAND FOR JURY TRIAL

The plaintiff respectfully demands a jury trial of all issues triable to a jury.

DATED: August 13, 2025,

Respectfully Submitted,

By_____
 Bryan J. Thomas
Thomas & Associates
Attorney for Plaintiff

24.